THOMAS STEVENS AND JOHN A. STEVENS, *vs.* ALEXAN-
DER GREGG.—*December,* 1838.

In equity it is well established, that the personal estate is the natural and primary fund for the payment of debts and legacies, even where they are expressly charged upon the real estate, descending or devised; and that the real estate is only to be resorted to as an auxiliary fund, after the personalty has been exhausted.

The real estate is never charged with the payment of legacies, unless the intention of the testator so to charge it, is either expressly declared, or fairly and satisfactorily to be inferred from the language of the will.

A bequest of $500 to each of the testator's two grand-sons, to be paid by his executor, with a devise of the remainder of his estate, real and personal, to his executor, is not evidence of an intention to charge the real estate in the hands of the devisee, with the payment of the legacies.

APPEAL from the court of *Chancery.*

ON the 15th June, 1826, *John* and *Alexander Gregg* filed their bill in Chancery, alleging that *James* and *Mordecai J. Allen,* were indebted to them in the sum of $2,629 22 upon their promisory note: that Mordecai J. Allen died in February, 1821, leaving his nephews, the appellants, his heirs at law, and *James Allen* his surviving partner; that he devised certain real property to John, the son of James

Allen, and the residue of his estate to his said nephews, and appointed *James Allen* his executor.   The bill charged, that the complainants obtained a judgment against James Allen, but that his estate was consumed by elder judgments; that the personal estate of Mordecai J. Allen and James Allen, also now dead, is insufficient to pay their debts.   This bill, which was filed against *John Allen, James Allen, David Davis* and the appellants, was so proceeded with, that on the 12th September, 1829, the real estate of Mordecai J. Allen was decreed to be sold for payment of the complainant's claim.   On the 14th December, 1829, the trustee reported a sale; and upon the 31st March, 1834, the first sale having proved insufficient to pay the complainant, a sale of other property of M. J. Allen was decreed, which was also made and reported, but the whole proceeds were still not sufficient to pay M. J. Allen's creditors.

At this stage of the proceedings, and on the 22d June, 1837, the appellants filed their petition in this cause, before the ratification of the second sale, alleging that the real estate of which M. J. Allen died seized, and which was sold as aforesaid, was devised to him under the will of his father, *John Allen,* who was the grandfather of these petitioners; that by the will of their said grandfather, they are each entitled to the sum of five hundred dollars, to be paid to them by the executor of the said *John Allen,* upon their attaining the age of twenty-one years; that the said testator, appointed the said *Mordecai,* his executor, who assumed the duties of the office, but has not paid the said sum, or any part thereof, and they have arrived at age; that said *Mordecai* is dead, and his personal estate is insufficient to pay his debts; and that they are entitled to be paid out of the proceeds of the land, devised by the said *John* to the said *Mordecai.*   Prayer, that out of the sum arising from the proceeds of John's estate they may be paid, and for further relief.

The will of *John Allen,* showing the legacy, was filed with this petition.

This petition was answered by *Alexander Gregg*, the survivor of *John Gregg*, who alleged,

1. That the petitioners were parties defendants to the original bill, and therefore bound by the decree, and the order ratifying the auditor's account distributing the first fund, which are a bar to any claim to that part of said proceeds.

2. The legacy relied on in the petition was also denied.

3. That the legacy was a pecuniary one, payable out of John Allen's personal estate, and under no circumstances payable out of his real estate.

4. That it is not shown that Mordecai Allen ever had personal estate out of which he could have discharged such legacy.

5. That if *John* left personal estate sufficient to pay said legacies, and that the same was wasted, then the petitioners can only claim rateably with the general creditors of Mordecai.

6. That respondent has no knowledge of the condition of John Allen's personal estate, whether sufficient or insufficient to pay legacies.

7. That the claim is presumed to be satisfied, from the lapse of more than twenty years; and also from the effect of the statute of limitations.

8. That the petitioners, as devisees of *Mordecai Allen*, held the same for many years, and enjoyed its profits to their own use, to a greater amount than their own demand, &c.

On the 15th July, 1837, Bland, chancellor, dismissed this petition, with costs, being of opinion, that on the ground of their wilful default, the claims of the petitioners must be altogether rejected.

From this decree the petitioners appealed to this court, and the cause was argued before Buchanan, Ch. J., Stephen, Archer and Dorsey, Judges,

By J. Johnson, for the appellants, and
Alexander, for the appellee.

STEPHEN, Judge, delivered the opinion of the court.

In this case a bill was filed in the high court of Chancery of this State, by *John Gregg & Co.*, alleging themselves to be creditors of *Mordecai J. Allen*, against his devisees and administrators *de bonis non*, for a sale of certain real estate, on the ground that his personal estate was insufficient for the payment of his debts. A decree passed for the sale, according to the prayer of the bill, under which a part of said real estate was sold; and the proceeds of sale were ordered to be distributed amongst certain of his creditors, according to the auditor's report. Afterwards, upon the petition of *Alexander Gregg*, the surviving partner of *John Gregg & Co.*, alleging that the proceeds of the *first* sale, were insufficient for the payment of his debts; and that the trustee appointed to make the sale, doubted his authority, under the decree, to make sale of the balance of his real estate, an order was passed by the chancellor, directing him to proceed to make a *further* sale according to the prayer of the petition, for the purpose of satisfying the balance of the claim against his estate. After the *second* sale was made, and before the fund was distributed, the appellants filed their petition, alleging themselves to be preferred creditors of *Mordecai J. Allen*, and praying to have their claims satisfied out of this fund, on the ground of a priority of title to the same; and that if it should prove inadequate for that purpose, that they may be paid the balance of their claims out of the proceeds of the *former* sale. The proceeds of the first sale having, however, been distributed by the order of the chancellor before the filing of their petition, they have abandoned their claim to such proceeds as untenable, and claim to be paid out of the fund produced by the second sale, as far as it will suffice for that purpose.

Their claims, as creditors, are founded upon the will of their grandfather, *John Allen*, which is exhibited with their petition, in which a legacy of five hundred dollars is given to each of them, payable at their respective ages of twenty-one years. The clause of the will in which the legacies are

given, and upon which their claims against the estate of *Mordecai J. Allen* as creditors are founded, is in the following words:

" After my just debts and funeral charges are paid, to my two grandsons, *Thomas Stephens* and *John Allen Stephens*, five hundred dollars each; to be paid unto them by my executor; when they shall respectively arrive to the age of twenty-one years, and no more of my estate; the remainder of my estate, consisting of real and personal, situated, lying and being in *Cecil* county and *Kent* county, in the *State of Maryland*, or elsewhere, to my beloved son *Mordecai James Allen*, and to his heirs and assigns for ever."

The will then proceeds to make a further disposition of his property, upon certain contingencies, which, however, does not affect the merits of this controversy. The testator finally appoints his said son, *Mordecai James Allen*, sole executor of his last will and testament.

It is not alleged in the petition, nor does it any where appear in the proof, except so far as it may be collected from the face of this will, that the testator died possessed of any personal estate, out of which the legacies to his two grandsons were payable, or to be paid, by his executors.

Upon what ground, then, it may be asked, can they claim to be creditors of the fund arising from the sale of Mordecai J. Allen's real estate?

In equity it is well established, that the personal estate is the natural and primary fund for the payment of debts and legacies, even where they are expressly charged upon the real estate, descending or devised; and that the real estate is only to be resorted to as an auxiliary fund, after the personalty has been exhausted. For this unquestionable principle, if authority be necessary to support it, see *2d Johns. C. R.*, 628, where *Chancellor Kent* says, the personal estate is the proper fund to pay debts and legacies, and *in general*, it is first to be applied, though the real estate may be charged. But in this case it is, we think, very clear, that there is nothing in the language or disposition of the will,

from which an inference can be drawn, that the testator intended to charge the real estate in the hands of his devisee with the payment of these legacies. They both appear to have been equally the objects of his bounty, and it does not appear to have been his intention to encumber his lands with the payment of them. In the same book, page 622, the same learned chancellor says : " the testator bequeaths the sum of five hundred pounds to each of the plaintiffs when they attain the age of twenty-one, and the like sum to each of them, when they attain the age of twenty-five. These legacies have been partly paid by the executors, but the amount now due is not material on the questions raised." The only part of the will that gives any colour to the construction, that these legacies were intended to be a charge upon the land, is the clause which gives the residuary estate to the defendants, or those under whom they claim ; and which is in these words :

" I give, devise and bequeath all the rest, residue and remainder of my real and personal estate not herein before already devised and bequeathed."

This clause does not appear to me to afford evidence of an intention to charge the land with these pecuniary legacies ; he then says: " the real estate is not as of course charged with the payment of legacies. It is never charged, unless the testator intended it should be, and that intention must be either expressly declared, or fairly and satisfactorily inferred from the language and disposition of the will. This general rule does not seem to admit of dispute. If that residuary clause created such a charge, the charge would have existed in almost every case, for it is the usual clause, and a kind of *formula* in wills." The legacies then in this case, not being charged upon the land, and their being no proof in the record of any waste or *devastavit* committed by the executor, so as to charge him personally with the payment of these legacies, it follows as a necessary consequence from these premises, that the legatees can have no claim in the character of creditors of *Mordecai J. Allen* upon these funds ; and

that their petition was properly dismissed. Nor is there any thing in the case upon which they could claim to stand in the shoes of the creditors, whose debts are charged upon the land, on the principle of substitution. If, in the case of a mere charge upon the land, the doctrine of substitution could be made to apply, which, under the circumstances of this case, it is not necessary to decide. Under this aspect of the case, we deem it unnecessary to give any opinion upon the effect of the lapse of time, or the plea of the act of limitations, which were relied upon in the answer to the petition, and adverted to in the course of the argument.

THE ORDER IS AFFIRMED WITH COSTS.