JOHN PIPER, JR., vs. WM. H. TUCK and BENJAMIN K. MOR-
SELL, EXC'RS OF SAMUEL HAMILTON.

WILLS,—CONSTRUCTION OF: TRUSTS: CHARGE UPON REAL ESTATE IN EXONERATION,
   OR IN AID OF PERSONALTY: LIMITATIONS.—The last will and testament of S. H.,
   after making numerous devises and bequests by the first seventeen items, by
   the 18th item provided as follows: "I desire that the directions of my will
   may be carried out as soon after my death as may be practicable, regard being
   had to the interests of my devisees and legatees, in order that my just debts
   may be paid, and my estate be closed without unnecessary delay." The will
   devised all the estate of the testator, real and personal, to his executors to be
   sold, and the proceeds applied as directed therein.—HELD:

1st. That a trust must be created by express words or necessary implication,
   particularly a trust which charges the real estate with the payment of debts in
   exoneration of or in aid of the personal estate.

2nd. It is the established doctrine in England and in this State, that the personal
   estate is the primary fund; and our Acts of Assembly only authorize proceed-
   ings against the real estate upon the allegation and proof that the personal
   estate was insufficient at the death of the testator.

3rd. That in case of a will silent upon the subject of the payment of debts, the
   devises and legacies are by law subject to the prior claims of creditors to be
   prosecuted in the mode pointed out by law.

4th. If an express charge as, "after my debts and funeral expenses are paid, I
   devise and bequeath," &c., no longer warrants the deduction, (as decided in
   *Cornish vs. Wilson,* 6 *Gill,* 315, 316,) that the testator designed to render his
   real estate responsible, because the law already makes it so, the incidental
   allusion to his debts in the 18th item of the will of S. H. cannot be sufficient
   foundation for a trust or charge express or implied.

J. P. having filed a bill in equity against the executors of S. H., his claim being
   an open account, barred by the Statute of Limitations pleaded in bar in the
   answers of the executors, it was held:

That there was no charge in said will on the real estate in express words, or by
   necessary implication to prevent or suspend the operation of the Statute of
   Limitations, and it is immaterial to inquire whether or not the remedy should
   have been pursued at law.

APPEAL from the Circuit Court for Prince George's coun-
ty, sitting as a Court of Equity.

The complainant's bill was filed on the 28th of January,
1860, to recover from the appellees, the executors of Sam-
uel Hamilton, an open account alleged to be due the com-
plainant for services rendered the said Hamilton, by the
complainant, as his general agent, for the management of

his property in Allegany county, Md., from January, 1838, to January, 1859, amounting to $700. The allegations of the bill, the defences made by the answers of the defendants, and the facts of the case, are set forth in the opinion of this Court. This appeal is from the decree of the Court below, ( BRENT, J.,) passed on the 16th of May, 1864, dismissing the bill of complaint.

The cause was argued before BOWIE, C. J., and GOLDS-BOROUGH and WEISEL, J.

*Thomas G. Pratt* and *Daniel Clarke* for the appellants, argued :

1st. That by the will of Samuel Hamilton, deceased, the testator has blended the real and personal estate into one common fund, for the payment of debts and legacies, and that the complainant had a right to resort to a Court of Equity to recover his debt, without resorting to proceedings at law to exhaust the personalty. *Lewis vs. Darling*, 16 *Howard*, 1. *Hill on Trustees*, sec. 508. 1 *White & Tudor's Leading Cases*, 444 to 457. *Burch vs. Biles*, 4 *Mad.*, 187. *Kidney vs. Coussmaker*, 1 *Vesey, Jr.*, 436. 2 *Dickens*, 527. 2 *Eq. Ca. Abr.*, 479. 4 *Russ.*, 376. 2 *Mylne & Craig*, 595. 2 *Dallas*, 131. 2 *Binney*, 525. 6 *Binney*, 395.

It is not denied that the personal estate, as a general r ule, is the primary fund for the payment of debts, or that the real estate is exempt from the payment of debts and legacies, unless there be express words, or a plain intention to that effect, to be gathered from the language and definitions of the will.

T he Maryland authorities referred to by the appellee, are all cases where there are no express words or plain intention manifested to charge the realty. But where the real and personal estates, as in this case, are reduced into one

common fund, there the intention of the testator is manifestly to do away with the rules of priority, and the creditor can resort at once to equity, to recover from a fund which the testator has voluntarily confounded or mingled with the personalty.

2nd. By the will of Samuel Hamilton, deceased, a trust was created for the payment of his just debts. *Lansdale Ghequire,* 4 *H. & J.,* 259. *Magruder vs. Peters,* 11 *G. & J.,* 217. *Burke vs. Jones,* 2 *Ves. & B.,* 275. *Alexander vs. Murray,* 8 *Watts,* 504, and 9 *Id.* 523. *Hill on Trustees,* 345, 532. 1 *Robinson's Practice,* 566 to 571. *Spencer vs. Spencer,* 4 *Md. Ch. Dec.,* 465. 2 *Story's Eq.,* secs. 1245, 1246. And this is an express trust as contradistinguished from a trust created by operation of law.

The testator desiring to make suitable provision for his wife, concludes that it can be best done out of the proceeds of sale of his real and personal estate. For the purpose of such sale, he devises his estate to his executors and the survivor of them. He thus merges the whole property into one mass, and blends the funds arising from the sale. Section 3 of the will speaks thus: "Out of the proceeds of sale, I direct ten thousand dollars to be invested," &c. And then follow other devises and bequests which are to be paid out of these "proceeds of sale," which is a common fund. By the 18th clause of the will, he says: "I desire that the directions of my will may be carried out as soon after my death as may be practicable, regard being had to the interest of my devisees and legatees, in order that my just debts may be paid." He thus assigns as one of the reasons for vesting his whole estate in his executors, and blending his real and personal property, to be the payment of his just debts.

3rd. That at the time of Hamilton's death, the Statute of Limitations did not bar for services rendered for three years preceding his death, and that the foregoing evidence

was sufficient to remove the bar of the Statute as to the claim for services rendered more than three years prior to his death. *Peterson's Exc'rs vs. Ellicott,* 9 *Md. Rep.,* 52. *Guy vs. Daws,* 6 *Gill.* 82. *Quynn vs. Carroll's Admrs.,* 10 *Md. Rep.,* 197. *Ellicott vs. Nicholls,* 7 *Gill,* 96. *Mitchell vs. Sellman,* 5 *Md. Rep.,* 386.

That the acknowledgement need not be made to the plaintiff himself, but may be made to any one else. *Oliver vs. Grey,* 1 *H. & G.,* 204. Where a claim is revived by a new promise, the Statute of Limitations begins to run afresh from the date of the new promise. *Rob. Pr.,* 532. Limitations does not commence to run until there is a capacity to sue.

4th. At the time of Hamilton's death, the complainant's claim in part not being barred by the Statute of Limitations, and as to the other part, the bar of the Statute having been removed by the foregoing evidence, and a trust having been created for the payment of his just debts, the Statute does not reach or apply to the same so as to prevent the recovery in a Court of Equity. *Lansdale vs. Ghequire,* 2 *H. & J.,* 259. *Burke vs. Jones,* 2 *Ves. & B.,* 275. *Spencer vs. Spencer,* 4 *Md. Ch. Dec.,* 465, 1 *Robinson's Practice,* 566 to 571. *Kane vs. Bloodgood,* 7 *Johns. Ch. Rep.,* 90. 4 *Russ.,* 430. 1 *Turner & Russ.,* 307. 8 *Watts,* 504. 9 *Watts,* 522.

The doctrine that in case of concurrent jurisdiction at law and in equity, the Statute is equally obligatory in both Courts, does not apply where an express trust is created for the payment of debts and legacies. The present case is clearly distinguishable from the class of cases covered by the decisions in *Dugan vs. Gittings,* 3 *Gill,* 161. *Sindall vs. Campbell,* 7 *Gill,* 176. *Young & Wife vs. Mackall,* 4 *Md. Rep.,* 374. *McDowell vs. Goldsmith,* 6 *Md. Rep.,* 336. Those were not cases of trust, but were proceedings in

equity for accounts for rent, recovery of a mortgage debt, &c., &c.

*Wm. H. Tuck* and *R. B. B. Chew* for the appellees.

1st. The personal estate in the hands of the executors of Samuel Hamilton, is sufficient to pay the complainant's claim, if any he has, and a Court of Equity has no jurisdiction to decree its payment out of the proceeds of sale of the real estate. The personal estate is the primary fund for the payment of debts, and must be first wholly applied by the executors for that purpose, unless it be clearly the intention of the testator, not only to onerate the realty, but also to exonerate the personalty from its legal liability. *Hill on Trustees,* (*Am. Ed.,*) *folio* 493, *and note* 1. And so a direction for the payment of all the testator's debts out of his real estate, or that they may be fully paid, will not be sufficient to exempt the personalty. *Id.,* 494. *Ancarter vs. Mayor, White's Equity, Law Library, vol. LXV.,* 438 to 441, *and notes to same case,* 442 to 456.

The final result of the decisions is stated to be, (page 451,) that unless the personalty, although specifically bequeathed, be expressly or clearly exonerated by other parts of the will, a charge upon the lands will not have that effect. In Maryland the rule is also firmly established, that the real estate will be exempt from the payment of the debts and legacies, unless there be express words, or a plain intention to that effect, to be gathered from the language and dispositions of the will. *Ayre et al. vs. Smith & Buchanan,* 4 *G. & J.,* 296, 302. *Chase vs. Lockerman,* 11 *G. & J.,* 186, 203. *Stevens vs. Gregg,* 10 *Id.,* 147. *Hoye vs. Brewer & Troup,* 3 *Id.,* 157. *Sellman vs. Sellman,* 3d *Md. Ch. Dec.,* 80. *Cornish vs. Wilson,* 6 *Gill,* 315, 316, 317.

In the case of *Hoye vs. Brewer & Troup,* relief was refused, notwithstanding it was admitted in the record that

the personal estate was inadequate to pay the legacy. The averment should have been made in the bill, and supported by proof if not admitted. Here the debts and legacies were expressly charged upon both the real and personal estate, and it was held that the personal estate must be first exhausted.

It will be contended, that this case forms no exception to the general rule. The case of *Lewis vs. Darling*, 21 *Curtis's Decisions of the Supreme Court, page* 1, is very unlike this. There the testator was domiciled in the Island of Cuba at the time of his death. There was no administration in the United States, and no personal estate which could be applied by a Court of Equity for the payment of the legacy sued for. The bill was filed against the husband of the testator's daughter, (who was the residuary devisee and legatee,) charging him with having received large sums of money, the products of sales of the testator's real estate in Florida, for which he was accountable to pay the legacy in the first place, and then for the purposes of the residuary devise. It appears to have been decided upon the peculiar circumstances of the case, and independently of the exception to the general rule, referred to in *Hill, page* 508, although that exception, with authorities in support of it, cited by *Hill*, seem to have been recognized and adopted by Justice WAYNE in his opinion. They are principally cases of legacies, and not of debts.

The case is opposed to the Maryland cases on this subject. *Hoye vs. Troup & Brewer, Stevens vs. Gregg, Cornish vs. Wilson*, and will not overrule them. See, also, 2 *Johns. Ch. Ca., Lupton vs. Lupton*, 614, 628. The decisions of the State Courts control in cases arising within and confined to parties in the territorial jurisdiction.

2nd. The will of Samuel Hamilton does not create a trust for the payment of debts. There are neither express

words nor a plain intention to be ascertained from the words of the will. *Hill, supra.* 2 *Story's Equity, sec.* 1246.

The testator was possessed of a large real and personal estate. His principal object appears to have been to make "the most suitable provision for his wife," and this he declared, after "mature deliberation," could best be done by the sale of his real and personal estate, which he directs to be sold for the purpose by his executors. He then proceeds to distribute the balance of his estate amongst his numerous relatives, making only a passing allusion to his debts, (section 18 of his will,) evidently intending that they should be paid by his executors in the ordinary course of administration, whom he then appoints, and leaves the residuum of his estate to his adopted son, Samuel Hamilton Wright. In no other portion of the will is there the slightest evidence of any intention to create a trust for the payment of debts. If it be conceded that the words here used are sufficient to bring this case within the general rule of trusts for the payment of debts, yet such is not their effect in Maryland. Since the Act of 1785, ch. 72, the words, "after my debts and funeral charges are paid," in a will, "have no effect." *Cornish vs. Wilson,* 6 *Gill,* 315, 316, 317. See, also, Act of 1831, ch. 315, sec. 10. Such trusts are not now favored. *Cessante ratione legis, cessat ipsa lex.*

3d. The complainant's debt was barred by limitations at the time of Hamilton's death, and will not be revived by a trust created by his will for the payment of his debts, if any such trust was created by said will. *Hill on Trustees, Am. Ed.,* 479, 503. 2d *Story Eq., Jur., sec.* 1520 *a,* note 1. *Burke vs. Jones,* 2 *Ves. & B.,* 275. *Spenser vs. Spenser,* 4 *Md. Ch. Dec.,* 465. *Dugan vs. Gittings,* 3 *Gill,* 161. *Sindall vs. Campbell,* 7 *Gill,* 76. *McDowell vs. Goldsmith,* 2 *Md. Ch. Dec.,* 390, 391, 392. *Id.,* 6 *Md. Rep.,*

336, 337. *Young vs. Mackall*, 3 *Md. Ch. Dec.*, 407, 408, 409. *Id.*, 4 *Md. Rep.*, 366, 374.

The record contains no evidence sufficient to remove the bar of the statute to the complainant's claim, at any time within three years before the death of Hamilton, the testator ; and if there is any such evidence, the complainant's bill not having been filed within three years after such promise, the claim is, nevertheless, barred by limitations, and the complainant cannot recover. The promise must not be to a stranger, but to the creditor, or some one acting for him, and upon which the creditor is to act or confide. 2 *Story Eq., Jur.*, secs. 1521, 1521 *a.*

An acknowledgment to remove the bar must be of a subsisting debt, and equivalent to a promise to pay. *Oliver vs. Gray*, 1 *H. & G.*, 204. *Duvall vs. Peach*, 1 *Gill*, 172. *Carter vs. Cross*, 7 *Gill*, 43. *Ellicott vs. Ellicott, Id.*, 85. *Mitchell vs. Sellman*, 5 *Md. Rep.*, 386, 387, 388. The acknowledgment must go to the fact, not only that the claim was originally just, but is still due. *Locke's Admr., vs. Sasscer*, 8 *Md. Rep.*, 380, 381. *Dawson vs. King*, 20 *Md. Rep.*, 442. Payment on a running account will not remove the bar of limitations, unless at the time of payment a copy of the account, or some other evidence, be furnished of its contents, and the payment be made with a full knowledge of the charges in the account, and recognising its validity. *Beltzhoover vs. Yewell*, 11 *G. & J.*, 216.

The case of *Blakeway vs. Strafford*, 2 *Pere Wms.*, 373, referred to in the argument of the complainant's counsel, in the Circuit Court, was reversed in the House of Lords. See the observations of Chancellor KENT upon this case, in *Roosevelt vs. Mark*, 6 *Johnson's Ch.*, 293 to 296. The case in 4 *Harris & Johnson*, 257, appears to have been decided on the ground that there was proof of the acknowledgment of the claim by the executors and legatees after the death of the testator.

4. The complainant's claim is a stale demand, and he has been guilty of gross laches in prosecuting his alleged rights, and will not be favored in a Court of Equity. 2d Story Eq. Jur., sec. 1520, notes 2, 3. Hertle vs. McDonald, 2 Md. Ch. Dec., 129, 130, 131, 132, 135, 136. 3 Md. Rep., same case. Gibson's Ex'r vs. Farmer's Bank, 2 Md. Rep., 231. Id., 9th Gill, 377.

Bowie, C. J., delivered the opinion of this Court.

The appellant, the complainant below, by his bill filed 28th of January, 1860, charges that the testator of the appellees, employed him as his agent from the 1st of January, 1838, and he continued to act as such to the death of the testator, who died some time in January, 1857, and afterwards discharged the duties of agent until the 1st of January, 1859, for which there was due to the appellant $661.89, after allowing certain credits, with interest from 1st of January, 1859. That the testator promised to compensate him for his services, and on several occasions within three years prior to his death, renewed his promise, to wit: in 1855 and 1856. That being seized and possessed of real and personal property, on or about the 4th of May, 1855, he duly made his last will and testament, etc., and amongst other things, devised to the appellees all his estate, real and personal, to be sold, and the proceeds to be disposed of as directed therein, and appointed the appellees his executors. That one of the trusts upon which the real estate was devised to the executors, with power to sell the same, is the payment of the just debts of the testator, and that inasmuch as the testator had promised, within three years prior to his death, to pay him for the services rendered, his claim was a just debt against the estate of the testator at the time of his death, not barred by limitations, and that he is entitled to be paid out of the proceeds of sale of the real estate which was devised to be sold.

That the testator died in 1857, leaving his will unrevoked, in pursuance of which the executors possessed themselves of the property and sold the real estate, or intend to do so, and applied the proceeds of sale to the discharge of certain debts due by the deceased, and in execution of the trust created by the will, but they have refused to pay the appellant's claim, wherefore he prays an answer under oath, and that the claim be ordered to be paid out of the proceeds arising from the sale of the real estate, and for other and further relief.

The will, which is exhibited as a part of the bill, after providing for his burial, declares it is his anxious desire to make suitable provision for his wife, and after mature deliberation, he has concluded it can best be done out of the proceeds of sale of his real and personal estate, which he thereby directs to be made by his executors, whenever and on such terms as the Orphans' Court may direct, with the exception of such parts as he may reserve or specifically bequeath ; and he devises and bequeaths his estate to his executors and the survivors of them for the purpose of such sale. The subsequent items of the will distribute the proceeds in various amounts, after giving ten thousand dollars to his wife, and making various pecuniary legacies. No reference is made to his debts until the 18th item, which provides as follows :

18. "I desire that the directions of my will may be carried out as soon after my death as may be practicable, regard being had to the interests of my devisees and legatees, in order that my just debts may be paid and my estate be closed without unnecessary delay."

He bequeathed all the residue of his estate to Samuel H. Wright, and appointed the appellees his executors. Two codicils were subsequently made, which do not in any manner affect the question before us. The appellees' answers, after admitting the execution of the will, the death of the

testator, and the grant of letters testamentary to themselves, aver that they gave the notice required by law for creditors to file their claims ; that they have sold part of the land ; that they have no personal knowledge of any services rendered by the complainant. Nor do they believe he was employed as general agent for the management of the lands in Allegany county.

They expressly deny that they ever employed him as agent, and have no knowledge of any services rendered by him for the estate, and are advised that the agency, if any, terminated at the death of the testator.

They deny that the will creates any trust for the payment of the debts of the deceased, and aver that the appellant, if he had any demand against the deceased, has a full and ample remedy at law.

They deny that their testator within three years before his death, or at any other time, promised to pay the said claim ; and if the appellant ever had any cause of action against the deceased, or the appellees as executors, they aver the same was barred by limitations at the time of filing the bill, and they crave the benefit of the same as fully as if formally pleaded.

A general replication was filed, testimony taken and returned, and upon final hearing a decree passed dismissing the bill, from which this appeal is taken.

The agency for which compensation is sought, was an agency between the complainant and the defendant's testator, which terminated with his life. No renewal or recognition of this agency by the respondents is alleged, or any promise on their part to pay the supposed debt of their testator.

The bill charges that the testator promised in 1855 and 1856, and within three years of his death, in conversations with other persons admitted his indebtedness, but nowhere.

alleges he so promised within three years of filing the bill, and shows no cause why the bill was not sooner filed.

There is neither allegation or evidence of any promise or admission by the executors of the will. The latest evidence of promise or acknowledgment on the part of the testator, refers to July, 1856. This must be assumed to relate to services previously rendered, and cannot be construed so as to affect subsequent services. The testator, as alleged, died in January, 1857. The complainant's bill was filed on the 28th of January, 1860. The claim being an open account, is barred by the lapse of three years from the time the cause of action accrued, unless there was something in the will, express or implied, to prevent such a legal presumption.

The theory of the appellant is, that the testator having merged his personal and real estate by devising both to his executors to be sold, there was no obligation on them to pursue their remedy at law, and the will containing an express trust for the payment of debts, the Statute of Limitations does not apply to his claim.

It is not material to enquire whether the remedy should have been pursued at law as the Statute of Limitations, if not suspended by a charge on the real estate expressly or by necessary implication, is conclusive of the case.

A trust must be created by express words or necessary implication, particularly a trust which charges the real estate with the payment of debts in exoneration of, or in aid of, the personal estate. It is the established doctrine in England and in this State, that the personal estate is the primary fund. Our Acts of Assembly only authorize proceedings against the real estate upon allegation and proof that the personal estate was insufficient at the death of the testator.

In case of a will, silent upon the subject of the payment of debts, the devises and legacies are by law subject to the

prior claims of creditors, to be prosecuted in the mode pointed out by law.

The language of the testator, in the present case, is not "after payment of my debts, or my debts being paid, I devise and bequeath," but after seventeen items, making bequests to more than twenty persons, he desires the directions of his will may be carried out as soon after his death as may be practicable, *regard being had to the interest of his devisees and legatees, in order that his debts may be paid and his estate closed without unnecessary delay.*

The words, "after my debts and funeral charges are paid, I devise and bequeath," though at common law a charge on real estate in the event of a deficiency of personal assetts, are held now in Maryland to be almost unmeaning in form and rarely of any import. Since the Act of 1785, ch. 72, they are wholly immaterial and inoperative, as that Act of Assembly renders the real estate, in aid of the personalty, equally liable for the payment of debts, whether they are contained in the will or not. "No deduction as to the intention of the testator to make such a charge can be drawn from them," per DORSEY, J. *Cornish vs. Wilson,* 6 *Gill,* 315, 316.

If an express charge, strong as the terms above cited, no longer warrants the deduction that the testator designed to render his real estate responsible because the law already makes it so, the incidental allusion to his debts, in the 18th item, cannot be sufficient foundation for a trust or charge, express or implied.

In the case of *Stevens vs. Gregg,* 10 *G. & J.,* 147, 148, this Court, after laying down the general principle that the personal estate is the primary fund for the payment of debts and legacies, even where they are expressly charged upon the real estate descending or devised, replying to the argument that an intention to charge the legacy in that case might be inferred from the residuary bequest of all the rest

and residue of the real and personal estate not thereinbefore already devised, adopts the language of Chancellor KENT, viz: "This clause does not appear to me to afford evidence of an intention to charge the land with these pecuniary legacies;" * * * "the real estate is not, as of course, charged with the payment of legacies." It is never charged unless the testator intended that it should be, and that intention must be either expressly declared or fairly and satisfactorily inferred from the language and disposition of the will." This general rule does not seem to admit of dispute. The rule thus laid down with regard to legacies is equally applicable to debts.

The language used by the testator in this case indicates no purpose to change the order in which the assetts were applicable in law or equity. In the case before cited, it is said: "The natural presumption as to the intention of every testator, unless the contrary appears upon the face of the will, is that all his devises, bequests and directions shall be gratified and conformed to. He assumes himself to be in a condition to make them. In contemplation of law, no presumptions arise independently of what appears on the face of the will, that he designed the gratification of any one of his expressed objects more than another, except that he is presumed to know, or his last will and testament is to be construed as if he *did know, the established principle of law;* * * * * * that debts and legacies are payable out of the personal estate, and are not by will chargeable upon the real estate of the testator, unless by the express terms of the will, or an implication arising thereon which is equivalent evidence of the testator's intention to make the charge, that the use of express terms for that purpose would be." *Cornish vs. Wilson,* 6 *Gill,* 320.

There being, in our opinion, no trust in the will for the payment of debts, no charge of the same, express or implied, on the real estate, there is nothing to prevent the bar of

the Statute of Limitations relied on by the respondents. Without expressing any opinion on the other points raised in the argument, for the reasons assigned above, the decree of the Circuit Court for Prince Georges county must be affirmed with costs to the appellees.

*Decree affirmed.*

( Decided January 17th, 1867.)