ESTATE OF HABERLI: NAUMANN, Appellant, v. TOFT, Guardian *ad litem,* and others, Respondents.

*No. 55. Argued November 25, 1968.—Decided December 20, 1968.*
(Also reported in 163 N. W. 2d 168.)

66

For the appellant there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Robert J. Kaftan*.

For the respondents there was a brief and oral argument by *Thorval T. Toft* of Sturgeon Bay.

HANLEY, J. The following issues are raised on this appeal:

(1) Was the testamentary gift a specific or a demonstrative legacy;

(2) If a specific legacy was created, was it adeemed by extinction; and

(3) Was the testatrix's intention to have all of the children share equally in the estate?

### Type of Testamentary Gift.

The testamentary gift to Laura Naumann can only be a specific legacy.

"A specific legacy may be defined as a bequest of a particular, individualized chattel, fund, or portion of the testator's personal estate, which is set apart from the

balance of his property and which is differentiated from all other articles or funds of the same or a similar nature." 57 Am. Jur., *Wills,* p. 935, sec. 1401.

"A 'specific legacy' is a gift by will of a particular thing, or specified part, of the testator's estate, which is so described as to be capable of being distinguished from all others of the same kind." 96 C. J. S., *Wills,* p. 878, sec. 1125.

". . . words specifically identifying the property and indicative of possession are necessary in the making of a specific bequest." *Will of Blomdahl* (1935), 216 Wis. 590, 593, 257 N. W. 152, 258 N. W. 168.

Recall again the words used in Paragraph Three of the will in question:

"I herewith will and bequeath . . . the Five Thousand Dollar ($5000.00) Note owed to me by my daughter, Viola Haberli. This Note is dated September 28, 1955, with interest paid up to date on it. . . ."

The gift is specifically identified and possession is indicated.

Appellant contends, however, that the remainder of Paragraph Three in the will makes the gift a demonstrative legacy.

"A 'demonstrative legacy' is a bequest of a certain sum of money, stock, or the like, payable out of a particular fund or security in such a way as not to amount to a gift of the corpus or evince an intent to relieve the general estate from liability if the particular fund or security fails. . . . Two elements are necessary: (1) It must be an unconditional gift in the nature of a general legacy. (2) The legacy must indicate the fund out of which it is payable." 96 C. J. S., *Wills,* p. 883, sec. 1125. *See also* 57 Am. Jur., *Wills,* p. 937, sec. 1403, and *Will of Loewenbach* (1936), 222 Wis. 467, 269 N. W. 323.

Appellant contends that the overall debts of Viola Haberli to the deceased made up the "fund" from which the $5,000 must be paid to Laura. This contention must fail. The legacy in question is not an "unconditional gift" of $5,000; nor is the existence of the fund which

appellant refers to sufficiently established by the language of the will.[1]

The reason that the dispute developed over the type of legacy which is involved here is obvious. Specific legacies are satisfied only by a delivery of the particular item designated. When the particular item is not in the estate when the legacy would become operative, the specific legacy ordinarily has no effect, *i.e.*, it is adeemed by extinction.

A demonstrative legacy, on the other hand, survives as a general legacy even when the particular fund out of which it is payable is not in existence when the legacy would become operative. A general legacy, of course, is satisfied out of the general assets of the estate.

Thus the classification of the legacy involved in this case as a specific legacy would ordinarily mean that the named beneficiary would receive nothing from the provision quoted because the note in question here had been satisfied before the testatrix's death.

### *Was the Specific Legacy Adeemed by Extinction?*

An exception to the general rule that a specific bequest is adeemed by extinction is set out in 96 C. J. S., *Wills*, p. 880, sec. 1125:

". . . If the particular thing is not in existence when the bequest would become operative, or is not owned by the testator at the time of his death, the specific legacy

---

[1] Appellant contends that the use of the following language in Paragraph Three of the will indicates the testatrix's intention to give a gift out of a fund:

". . . I will the *balance* of Seven Thousand Dollars ($7,000.00) that my daughter Viola owes me . . . ." (Emphasis supplied.)

The use of the word "balance" is not sufficient, by itself, to indicate that the testatrix was treating the entire debt as a fund. On the contrary, the particular clarity with which the $5,000 note in question is identified clearly evidences the testatrix's intention to separate that obligation from all the other assets of the estate.

has no effect. However, if the property exists in substance and is still owned or controlled by the testator at the time of his death, the intention to bequeath it must be carried out. . . ."

The same rule is stated somewhat differently in 6 Page, *Wills* (Bowe-Parker), p. 260, sec. 54.11:

"If property which is specifically devised or bequeathed remains in existence, and belongs to testator at his death, slight and immaterial changes in its form do not operate as an ademption. . . ."

This court applied this exception to the general rule in *Will of Hinners* (1934), 216 Wis. 294, 257 N. W. 148. In that case the testator left his wife a specific bequest of 225 shares of his stock in the Geo. H. Smith Steel Casting Company. The company subsequently reorganized and changed both the par value of its stock and the number of outstanding shares. The court found that the thing actually bequeathed was the interest in the Smith Company represented by 225 shares of stock at the time the will was executed.

". . . As that was a specific legacy, no ademption thereof would result as long as the subject-matter of the legacy was still to be found among the assets of the testator at the time of his death, even though the subject-matter thereof was somewhat changed in form. . . . *Will of Hinners, supra,* at page 300.

Appellant argues that this exception controls the instant case. She contends that it was Ida's intention to give her the $5,000 which the note represented, and that the very same $5,000 is now part of the real estate which is in Ida Haberli's estate. It is true that the $5,000 represented by the note formed part of the purchase price for the real estate in Ida's estate. However, the test in Wisconsin, as in most states, is whether the specific item bequeathed is in the estate. The test is not whether the dollar value of the specific bequest can be traced

to another asset. A slight change in form does not extinguish a specific bequest, but it is obvious that a $5,000 note is substantially different from a piece of realty.

In Wisconsin there is another exception to the general rule that a specific bequest is adeemed by extinction. In *Estate of Lefebvre* (1898), 100 Wis. 192, 75 N. W. 971, this court decided that a devise of certain land was not revoked by the subsequent making of a contract for the sale of the land by the testator. In arriving at the result, this court relied upon the fact that only a nominal amount had been paid on the contract. Moreover, R. S. 1878, sec. 2278 (now sec. 238.02 (1), Stats. 1965) was held to be controlling. Sec. 238.02 (1) provides:

"Every devise of land in any will shall be construed to convey all the estate of the devisor therein which he could lawfully devise, unless it shall clearly appear by the will that the devisor intended to convey a less estate."

The court held in the *Lefebvre Case* that the devise in the will passed whatever legal and equitable rights the testator had at his death.

This court discussed the *Lefebvre Case* in *Estate of Atkinson* (1963), 19 Wis. 2d 272, 275, 120 N. W. 2d 109:

"The great weight of authority at common law, independent of statute, holds that testator's execution of a will with a specific devise of land and his later sale of this land works an ademption of the devise in his will . . . ."

Nevertheless, this court in the *Atkinson Case* reluctantly affirmed the court's interpretation of the statute in the *Lefebvre Case:*

". . . If we were to pass on the applicability of that statute [sec. 238.02 (1)] without the fetters of the *Lefebvre* precedent, we would have difficulty in reaching this result." *Estate of Atkinson, supra,* at page 277.

The reason, of course, that the court had trouble with the *Lefebvre Case* was that it flew in the face of the equitable conversion doctrine. Under that doctrine, which was very adequately discussed in the *Atkinson Case, supra,* the testator who devised his land and then subsequently sold it under a land contract no longer had an interest in realty to dispose of. After a land contract is entered into, the vendor has only an interest in personalty.

The only explanation, therefore, of the *Lefebvre* exception to the general rule of ademption by extinction is that it was based on an applicable statute.

The *Lefebvre* exception to the general rule on ademption is important to this case because the appellant wants the court to extend the rule of that case. Appellant contends that even if the legacy involved here is specific the proceeds can still be traced to the estate and, therefore, under the doctrine of equitable conversion the bequest is not adeemed.

The point of appellant's contention is not clear. Apparently she feels that the doctrine of equitable conversion "saved" the specific devises in the *Lefebvre* and *Atkinson Cases.* Now she wants the doctrine applied to this case where there was a specific legacy, the proceeds of which can be traced to real estate. This reasoning evidences a complete misunderstanding of the *Lefebvre* and *Atkinson Cases.* In those cases the court specifically rejected the doctrine of equitable conversion because of an applicable statute. The application of equitable conversion would have resulted in an ademption of the specific devises in those cases. We think that the appellant is contending that the court should equitably regard the traceable proceeds of the note in question as still retaining the character of the item from which the proceeds were derived. Annot. (1957), 51 A. L. R. 2d 770, 794, indicates that this type of reasoning would be an application of the general doctrine of equitable conversion. This would be just another way of saying that

when the proceeds of specifically bequeathed property are traceable to another asset, then the specific legacy or devise does not adeem. As previously pointed out, that is not the rule, generally or in Wisconsin.

". . . The property in which the proceeds are reinvested is as specific as the property which was originally given by will; but since the will has described certain property, and testator does not own such property at his death, the property in which the proceeds of the original bequest or devise have been invested will not pass under such gift." 6 Page, *Wills* (Bowe-Parker), p. 257, sec. 54.9, and cases cited therein.

To adopt the reasoning advanced by appellant would be to completely reject the theory of ademption whenever the proceeds of an extinguished testamentary gift were capable of being traced to another asset. This case certainly does not present any compelling reason to do so. We find that the specific legacy was adeemed by extinction.

### Intention of Testatrix.

Appellant contends that it was the obvious intention of the testatrix to treat each of the children equally either by providing a share of her estate to each in her will or by advances made during her lifetime. This is not an accurate summary of the record.

There is evidence that the testatrix wanted all of her children to share in her estate. The evidence does not establish that she intended the children to share equally. While there is some evidence of that intention, there are other indications that the testatrix provided for her children according to their respective needs.

A complete review of the evidence is unnecessary in any event because the alleged intention of the testatrix does not influence the decision in this case.

"In Anglo-American law, ademption connotes the taking away of the subject matter of a specific legacy or

devise by its destruction or disposition by testator in his lifetime. 3 American Law of Property, p. 604, sec. 14.13. Thus the specific devise or legacy cannot be given effect because the specific property attempted to be devised or bequeathed is no longer part of the testator's estate at the time of his death. Under the modern theory of ademption testator's intention is disregarded, and the question is whether or not the specific property is part of testator's estate at the time of his death." *Estate of Atkinson, supra,* at page 274. *See also:* 96 C. J. S., *Wills,* pp. 991, 992, sec. 1175.

We recognize that although the Wisconsin rule appears to be clearly established, there is a definite split of authority over the effect of the testator's intention.

The rule Wisconsin has adopted is referred to as the "identity" theory. Under this theory the court determines first, whether there has been a specific devise or bequest, and second, whether the particular asset is in the testator's estate at the time of his death. The "identity" theory appears to be the majority rule,[2] although some courts have referred to it as the minority rule.[3] The reasoning behind the "identity" theory is well set out by 6 Page, *Wills* (Bowe-Parker), p. 266, sec. 54.15.

"If the sale or collection of the bequest works an ademption or not depending upon testator's intention as inferred from the surrounding circumstances, many cases will arise in which it is difficult or impossible to ascertain what testator's intention was; and probably, in many cases, testator did not think of the consequences which would follow from his conduct. If the sale or collection of the bequest operates as an ademption or not, depending upon his intentions, and such intention may be shown by his oral declarations, then the controlling evidence in the case will consist of the written will, executed in accordance with statute, together with testator's oral declarations. This violates both the letter and the spirit of state wills statutes, which insist on the formalities of

[2] 96 C. J. S., *Wills,* p. 991, sec. 1175; 6 Page, *Wills* (Bowe-Parker), p. 266, sec. 54.15; *Estate of Atkinson, supra,* and authorities cited therein at page 274.

[3] *See Estate of Bierstedt, infra.*

writing and execution in order to avoid opportunities for perjury. . . ."

There is some authority holding that ademption depends upon the intention of the testator. *See* cases cited at 96 C. J. S., *Wills*, p. 991, sec. 1175; *Estate of Bierstedt* (1963), 254 Iowa 772, 119 N. W. 2d 234; and Annot. (1957), 51 A. L. R. 2d 770. These cases are said to follow the "intention" theory. However, most of these cases involve circumstances wherein the testator lost his capacity to change his will and the guardian subsequently authorized the sale of property which had been the subject of a specific bequest or devise.

Since Wisconsin follows the "identity" theory, the question of whether or not the testatrix here intended to revoke the bequest is immaterial. The material facts are: First, that this was a specific legacy; and second, that the subject of the legacy was not in the testatrix's estate when she died.

We are mindful that evidence of the testatrix's intention and the ordinary rules pertaining to the construction of a will are material in attempting to show whether a testamentary gift is a specific, a demonstrative, or a general legacy or devise. In this respect the appellant properly points out that a will is construed to give effect to the intention of the testator. However, the court cannot change the language of the will. Instead the court construes the words of the will. In this case the language of the will creating the specific legacy was so clear and unequivocal that there was no room for judicial construction.

We conclude the testamentary gift was a specific legacy adeemed by extinction and that the intention of the testatrix is immaterial to the decision reached in this case.

*By the Court.*—Judgment affirmed.